_____

No. 96-2048
_____

Joanne M. Long,                          *
                                         *
          Appellant,                     *
                                         *   Appeal from the United States
     v.                                  *   District Court for the
                                         *   Southern District of Iowa.
Shirley S. Chater, Commissioner          *
of the Social Security                   *
Administration,                          *
                                         *
          Appellee.                      *


_____

          Submitted:  December 13, 1996

             Filed:  March 6, 1997
_____

Before McMILLIAN and MAGILL, Circuit Judges, and WEBBER,[1] District Judge.
_____

MAGILL, Circuit Judge.


     Joanne M. Long appeals the decision of the Social Security
Commissioner (Commissioner) denying her Social Security benefits.  Long
argues that the Commissioner's decision is not supported by substantial
evidence because (1) the administrative law judge (ALJ) erred by rejecting
Long's subjective complaints and (2) the Commissioner has not met her
burden of proof to show that Long can perform jobs that exist in
significant numbers in the national economy.  We affirm.


_____

     [1]THE HONORABLE E. RICHARD WEBBER, United States District Judge
for the Eastern District of Missouri, sitting by designation.

## I.

Long was born on October 7, 1950.  She has a high school equivalency degree and one year of college education.  She was a drafting major at a community college and she has been on the Dean's list at least twice.  In the past, Long has worked as a waste treatment plant attendant, fast-food worker, punch press operator, and printer.  She has a verbal IQ of 91, a performance IQ of 117, and a full scale IQ of 96.  Long is five feet and two inches tall, and she weighs approximately 200 pounds.

Long filed her application for Social Security disability insurance benefits, pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-433 (1988) (Title II), on September 28, 1990.  She alleged that she has been unable to work since May 1, 1986, because of depression and anxiety, headaches, neck pain, and back pain.  The Commissioner denied her application.

Long appealed the Commissioner's decision to the district court,[2] which remanded Long's case to the Social Security Administration for further proceedings.  After a supplemental hearing before an ALJ, Long's request for benefits was again denied because, discounting Long's subjective complaints, the ALJ found that Long could perform jobs that exist in significant numbers in the national economy.  In making this finding, the ALJ relied on the testimony of a vocational expert.  The vocational expert testified that Long could work as a surveillance monitor, addresser, or document preparer, and that there are approximately 650 such jobs in Iowa and 30,000 such jobs nationwide.  On appeal, the district court affirmed the ALJ's decision to deny disability benefits.

---

[2]The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa.

-2-

## II.

We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled. See Clark v. Chater, 75 F.3d 414, 416 (8th Cir. 1996); see also 42 U.S.C. § 405(g) (1994). Substantial evidence exists if a reasonable mind would deem the evidence adequate to support the conclusion. Clark, 75 F.3d at 416. While this Court will consider evidence that detracts from the Commissioner's decision as well as evidence that supports the decision, we will not reverse "merely because substantial evidence exists for the opposite decision." Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996).

To be eligible for disability insurance benefits under Title II, an individual must meet Title II's "earning requirement." 42 U.S.C. §§ 416(i)(3)(B), 423(c)(1)(B). Long last met this requirement on December 31, 1991. When an individual is no longer insured for Title II disability purposes, we will only consider an individual's medical condition as of the date she was last insured. See, e.g., Bastian v. Schweiker, 712 F.2d 1278, 1280 (8th Cir. 1983).

## A.

Long argues that the ALJ improperly discounted her subjective complaints of disabling difficulties in reading and writing, disabling depression and anxiety, and disabling headaches, neck pain, and back pain. In Polaski v. Heckler, 751 F.2d 943 (8th Cir. 1984) (subsequent history omitted), we explained that:

> The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining

physicians relating to such matters as:

    1. the claimant's daily activities;
    2. the duration, frequency and intensity of
    the pain;
    3. precipitating and aggravating factors;
    4. dosage, effectiveness and side effects of
    medication;
    5. functional restrictions.

Id. at 948. Using the Polaski factors, the ALJ delineated at length the reasons why Long's subjective complaints had to be rejected. We agree with the ALJ's conclusion.

Long's complaints of disabling difficulties in reading and writing are contradicted by her academic accomplishments and the daily activities that led to their achievement. Although testing has indicated that Long reads at a ninth-grade level, she has attained her high school equivalency degree and is currently enrolled as a drafting major at a community college. While she sometimes takes as few as three credits per semester, she has taken as many as eight. Despite her frequent reliance on special services such as extra tutoring and having her books read onto tape, Long has made the Dean's list at her community college on at least two occasions.

With respect to Long's mental health complaints, she has been seen at the Vera French Community Mental Health Center (MHC) since July 1986. Her use of the therapy services provided by this facility has varied from sporadic to consistent. The MHC psychiatrist who monitored Long's progress starting in October 1988, Dr. Alice J. Harpring, indicated in her reports that Long has suffered from some mental health setbacks. However, Long herself has reported that taking the medication prozac has helped her. Finally, Dr. Harpring's assessments reflect that overall Long has done well under treatment.

Long has only infrequently sought treatment for her physical health complaints. For example, she has sought the help of a chiropractor on occasion and she has taken nonsteroidal, anti-inflammatory medication on an as-needed basis. She has testified to taking this medication very infrequently and could not be sure of the last time that she had taken it. We have noted that an individual's complaints of "functional limitations are inconsistent with her failure to take prescription pain medication or to seek regular medical treatment for her symptoms." Ostronski v. Chater, 94 F.3d 413, 419 (8th Cir. 1996).

Having considered these facts as well as the record as a whole, we hold that there is substantial evidence to support the ALJ's decision to reject Long's subjective complaints. We acknowledge that some evidence exists for the opposite conclusion; however, we hold that substantial evidence exists to support the ALJ's conclusion in the form of academic achievements, improving mental health assessments, and infrequent use of pain medication.

**B.**

Long argues that the Commissioner did not show that there are other jobs available in significant numbers in the national economy that Long can perform. We disagree.

The Commissioner can rely on the testimony of a vocational expert to carry her burden of proof of showing that jobs exist in the national economy that a claimant can perform. See Evans v. Shalala, 21 F.3d 832, 835 (8th Cir. 1994). To do this, the Commissioner may pose hypothetical questions to the vocational expert, the parameters of which do not have to include any alleged impairments that the ALJ has rejected as untrue. See House v. Shalala, 34 F.3d 691, 694 (8th Cir. 1994).

To decide whether jobs exist in significant numbers, we

consider, <u>inter alia</u>, the reliability of the claimant's and the vocational expert's testimony. Ultimately, however, we leave this determination "'to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation.'" <u>Jenkins v. Bowen</u>, 861 F.2d 1083, 1087 (8th Cir. 1988) (quoting <u>Hall v. Bowen</u>, 837 F.2d 272, 275 (6th Cir. 1988)). Here, the vocational expert testified that Long is capable of performing any of the approximately 650 jobs in the fields of surveillance monitoring, addressing, and document preparation that exist in Iowa, or one of the 30,000 such jobs that exists nationwide. The ALJ found this to be a significant number, and we agree.

Long argues that the vocational expert's testimony was insufficient because he used phrases that were equivocal. For example, at one point the vocational expert said that there were "probably . . . about 400 statewide [jobs]" for administrative support personnel and that "I think you'd be looking at the possibility of someone doing surveillance monitor work." Admin. R. at 387, <u>reprinted in</u> Appellant's Br. at 31. Having reviewed the vocational expert's testimony in its entirety, we are convinced that this language does not indicate that the expert was hedging or giving qualified responses. Taken in context, these phrases merely demonstrate that the vocational expert was aware that he was responding to hypothetical questions with expert opinions. Thus, by relying on the vocational expert's testimony, the Commissioner met her burden of showing that Long is not disabled.

**III.**

For the reasons discussed above, we affirm.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.